UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARIS HORTICULTURE, INC. | ) | |
| And | ) | |
| ARIS LAND HOLDINGS, LLC, | ) | |
| Plaintiffs, | ) | Civil Action No. 2:26-cv-00674 |
| vs. | ) | |
| FRANKARL (USA) INC. | ) | |
| And | ) | |
| FRANKARL GREENHOUSES PA, LLC, | ) | |
| Defendants. | ) | |

**COMPLAINT FOR BREACH OF CONTRACT**

Plaintiffs Aris Horticulture, Inc. ("Aris") and Aris Land Holdings, LLC ("ALH") (collectively, "Plaintiffs"), by and through undersigned counsel, for their Complaint against Defendants Frankarl (USA) Inc. ("Frankarl USA") and Frankarl Greenhouses PA, LLC ("Frankarl PA", and together with Frankarl USA, "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1. This is an action for breach of contract arising from Defendants' refusal to comply with the express, unambiguous terms of a written Asset Purchase Agreement and related Escrow

1

Agreement governing the release of $500,000 ("Escrow Funds") deposited in connection with Defendants' acquisition of Plaintiffs' real property ("Real Property"), greenhouses, and related assets located in Lancaster, Pennsylvania (the "Purchased Assets").

2. The Asset Purchase Agreement is dated as of April 11, 2025 and is between Frankarl (USA), Aris, and ALH. The Asset Purchase Agreement was amended by an Amendment dated as of October 14, 2025 (the "Amendment"), and a Novation and New Purchase Agreement dated October 14, 2025 (the "Novation") which designated Frankarl PA as the New Purchaser. The Escrow Agreement was entered into as of October 16, 2025, by Frankarl USA, Aris, and PNC Bank, National Association ("Escrow Agent"). The Asset Purchase Agreement as amended by the Amendment and the Novation is referred to herein as the "Purchase Agreement".[1]  Although the Novation named Frankarl PA as the Purchaser under the Purchase Agreement, Frankarl USA guaranteed the obligations of Frankarl PA thereunder. Capitalized terms not defined in this Complaint have the meanings ascribed to them by the Purchase Agreement.

3. Prior to the closing of the transaction, Defendants conducted extensive due diligence, visited the Real Property on at least eight (8) occasions from October 2024 through October 2025, and had numerous discussions with the Plaintiffs' management team including the onsite greenhouse Managing Director, Head Grower, HR manager, and other staff personnel.

4. The Purchase Agreement's express, unambiguous, terms make clear that the Defendants purchased the Purchased Assets "as is."

---

[1] The Asset Purchase Agreement, the Amendment, the Novation, and the Escrow Agreement are not attached to this Complaint given their voluminous nature. The Defendants, as signatories to these agreements, have copies of the each of the agreements.

5. As 300,000 square feet of the greenhouses were old and 28,000 square feet were new but had not been put into service by Aris so that construction thereof was not 100% complete, Defendants acquired the greenhouses at a significant discount.

6. Despite Plaintiffs' full compliance with the governing Purchase Agreement, Defendants have refused to execute the required written direction authorizing the release of the Escrow Funds to Plaintiffs.

7. Defendants manufactured six indemnification claims under Section 8.2 of the Purchase Agreement originally valued at $348,243 and later increased to over $500,000, which has caused the Escrow Funds not to be released by the Escrow Agent.

8. Plaintiffs provided Defendants with two separate written explanations as to why each of the alleged indemnification claims has no merit, is not in accord with the facts, and is contradicted by the unambiguous terms of the Purchase Agreement.

9. Defendants' refusal to rescind their unfounded Escrow Notice of a Claim for indemnification against the Plaintiffs, constitutes a material breach of the Defendants' obligations to pay the Purchase Price under the Purchase Agreement for which the Plaintiffs are entitled to damages.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Aris is an Ohio corporation with its principal place of business at 115 Third Street, S.E., Barberton, Ohio 44203.

12. ALH is an Ohio limited liability company whose sole member is Aris and it has principal place of business at 115 Third Street, S.E., Barberton, Ohio 44203.

13. Frankarl USA is a Delaware corporation with a principal place of business at 3F-1800 S. Ocean Blvd, Boca Raton, Florida 33432.

14. Frankarl PA is a Delaware limited liability company, which is qualified to conduct business in Pennsylvania.

15. Upon information and belief, Frankarl PA's members are not citizens of Ohio.

16. This Court has personal jurisdiction over Defendants because Defendants expressly consented to personal jurisdiction by contract. Section 9.13 of the Purchase Agreement provides that the parties, "irrevocably submit[] to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania."

17. In accordance with 28 U.S.C. § 139, venue is proper in this District pursuant to the Parties' contractual forum-selection clause, the venue provisions of the Purchase Agreement, and because the Real Property subject to this dispute is located in Lancaster, Pennsylvania.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

18. Under the terms of the Purchase Agreement, Defendants agreed to acquire the Purchased Assets for $7,500,000 plus the assumption of specified Assumed Liabilities.

19. Critically, under the Purchase Agreement, the Plaintiffs disclaimed all implied warranties and the Defendants agreed to purchase the Purchased Assets "as is", except as expressly stated in the Purchase Agreement. See Purchase Agreement at § 3.13.

20. Under Section 8.4 of the Purchase Agreement, Plaintiffs are not liable to pay any claim for payment of a loss for which the Defendants seek indemnification that is less than $37,500. See Purchase Agreement at § 8.4(a).

4

21. Under the Purchase Agreement and the Escrow Agreement, Defendants were required to deposit the Escrow Funds to secure potential post-closing indemnification obligations. See Purchase Agreement at § 2.3(b)(ii).

22. The Escrow Agreement expressly provides the Escrow Funds are to be released three (3) months after closing, subject to a properly noticed and timely indemnification claim. See Escrow Agreement at § 1.3(a)(iii).

23. After the transaction closed, Frankarl PA took possession of the Purchased Assets.

24. On November 28, 2025, Defendants sent Plaintiffs and their counsel, by email, a Notice of Claim for Indemnification ("Claim Notice") under Section 8.3(a) of the Purchase Agreement. A true and accurate copy of the Claim Notice is attached and incorporated as Exhibit 1.

25. Defendants asserted claims for six alleged Losses, without supporting documentation, for which they sought indemnification; however, none of the alleged Losses has merit.

26. Also on November 28, 2025, under Section 1.3(a)(i) of the Escrow Agreement, Defendants sent by email a copy of the Claim Notice to the Escrow Agent.

27. Defendants' Claim Notice caused the Escrow Agent to delay releasing the Escrow Funds rightfully due to the Plaintiffs and instead, the Defendants requested the Escrow Agent release a portion of the Escrow Funds to compensate Defendants for their purported Losses for which they were allegedly entitled to indemnification.

28. On December 8, 2025, Plaintiffs sent a "Dispute Notice" which responded to Defendants' Claim Notice. A true and accurate copy of Plaintiffs' Dispute Notice is attached and incorporated as Exhibit 2.

29. Plaintiffs disputed each of the alleged claims for indemnification and the alleged value of the Defendants' claim.

30. Plaintiffs provided a detailed explanation as to why Defendants' claims for indemnification had no factual merit, was contradicted by the Purchase Agreement, or both.

31. Further, under Section 8.5 of the Purchase Agreement, the Defendants were required to "take all reasonable steps to mitigate any Loss upon becoming aware of any event that would reasonably be expected to or does given rise thereto."

32. As Plaintiffs explained in the Dispute Notice, even if the Defendants suffered some Losses—which they did not—the Defendants failed to mitigate their alleged Losses as required under Section 8.5 of the Purchase Agreement.

33. After receiving the Claim Notice, Plaintiffs investigated the claims asserted by the Defendants to determine the validity of the alleged Losses and claimed breaches of the Purchase Agreement.

34. In the course of the investigation, Plaintiffs determined they did not breach the Purchase Agreement, Defendants suffered no actual Losses, and even if the Defendants did have a Loss—which they did not—the value of the alleged Losses did not exceed the $37,500 allowance enumerated in Section 8.4(a) of the Purchase Agreement, particularly after reducing them by the tax benefit attributable thereto as required by Section 8.5 of the Purchase Agreement.

35. For example, in the Claim Notice, Defendants alleged that six of the new greenhouses included in the Purchased Assets did not have an electric power source and that the heaters included therein were not working.

36. Defendants performed due diligence in the new greenhouses and related connector house on multiple occasions and were told six of the greenhouses were never put into service, not fully operational, and electric still had to be distributed inside the greenhouses. Despite Defendants' knowledge, Defendants never expressed any concern the electric still needed to be distributed inside the greenhouses prior to closing.

37. Plaintiffs made no representation that the new greenhouses had an electric power distribution inside the greenhouses or to the heaters. All Plaintiffs represented was that, to the knowledge of their senior executives, greenhouses could be used for the purposes for which they were being used. See Purchase Agreement, Section 3.3(f).

38. Defendants' assertion is disingenuous because at the time Defendants purchased the greenhouses, Defendants were well aware of the fact the six greenhouses referred to above were not being utilized by Aris and did not have electricity or heat inside the greenhouses.[2]

39. With regard to the heaters in the other 50 greenhouses, during the course of due diligence, Defendants represented to Plaintiffs that Defendants intended to replace all the heaters in these older greenhouses because the plants, tender annuals, Defendants intended to grow in the subject greenhouses required more heat than the plants, perennial young plants, Aris used the greenhouses for.

40. Defendants also claimed that the heaters were not properly maintained; however, the Purchase Agreement contained no such warranty.

41. The only representation the Plaintiffs made on this subject was that "during the twelve (12) months immediately preceding the date of this Agreement, the tangible personal property

---

[2] Prior to the Defendants' acquisition of the Purchased Assets, Aris spent $126, 215 on electrical work to connect existing panels to sub panels in the new connector house, distribute electric conduit, and hook up equipment in two greenhouses.

and fixtures included in the Purchased Assets have been maintained in accordance with historical practice."

42. The Defendants' allegation relating to the greenhouse heaters is belied by the fact that after the closing of the sale of the Purchased Assets, Defendants offered to sell the heaters located in the greenhouses to the Plaintiffs and represented they were operational.[3] Despite the fact Defendants purchased used greenhouses, with used heaters, at a significant discount, Defendants' indemnification claims are based on the cost to install brand new heaters.

43. With respect to the new greenhouses including the two Aris did use, prior to closing the transaction, Plaintiffs installed a gas line to the new connector house and a hook up for the heaters in the two new greenhouses.

44. Defendants had the ability to inspect the heaters during due diligence, did in fact inspect the heaters and the condition of the Real Property during due diligence, and were ultimately satisfied with the heating and water capacity at the Real Property. Consequently, Defendants' claim for indemnification as it relates to the electric power to the greenhouses and heaters in the greenhouses has no merit.

45. Defendants also asserted a claim for indemnification related to alleged rusted posts; however, this claim is entirely baseless.

46. Prior to Closing, Defendants identified a number of rusted posts and requested Aris repair or replace them.

---

[3] Defendants offered to sell several heaters to Plaintiffs because Defendants had no use for the heaters and intended to replace the heaters. In fact, in December of 2025, Defendants sold 24 heaters to Plaintiffs after confirming the heaters worked.

47. Aris, in an effort to satisfy the Defendants and finalize the transaction, paid in excess of $225,000 to repair or replace the rusted posts per an agreement with the Defendant.

48. Defendants were satisfied with Aris's repair and replacement efforts and accepted the remainder of the posts "as is."

49. With regards to the allegation that Plaintiffs failed to maintain tangible personal property and fixtures for the 12 months preceding the date of the Purchase Agreement, Plaintiffs covenanted to "use commercially reasonable efforts to preserve the Purchased Assets" between the execution of the Purchase Agreement and the Closing Date. Defendants assert that this covenant obligated Plaintiffs to correct every deficiency in the Purchased Assets to enable Defendants to use them for their intended use, which was different from their use by Plaintiffs. That is not, however, what the Purchase Agreement required.

50. Indeed, in 2024 and 2025, Plaintiffs spent a considerable sum of money on the maintenance and improvement of the Real Property and the Purchased Assets.

51. Plaintiffs spent $29,606 on maintenance expenses in 2024 and $25,894 in maintenance expenses in 2025. The expenses Plaintiffs incurred in 2025 were only for a partial year because Plaintiffs sold the assets to Defendants in October. These expenditures were more than adequate to satisfy Plaintiffs' obligation to use commercially reasonable efforts to preserve the Purchased Assets.

52. Plaintiffs never represented that the Purchased Assets did not have deficiencies. The Purchased Assets were sold "as is".  Moreover, the alleged deficiencies were known by the Defendants and the parties negotiated a price reduction to account for them.

53. Defendants have attempted to take a second bite of the apple for further price reductions well after Defendants had the opportunity to address these deficiencies prior to closing.

54. Moreover, the Defendants' indemnification claim relating to office heaters is not credible. The Defendants conducted several site visits, including onsite meetings in December and January—in the office conference room and individual offices—without ever raising concerns about heating.

55. Plaintiffs made no representations about the performance of the heating units. Indeed, the first the Plaintiff heard of this allegation was after closing. The Purchase Agreement only addressed Plaintiffs' activities prior to closing.

56. Prior to closing, the Real Property was inspected and the appraiser indicated the office area was properly cooled and heated.

57. Lastly, Defendants also asserted that pressure tanks and valves included in the Purchased Assets are defective. This allegation is also not credible as Plaintiffs' senior executives were never told of any failure of the pressure tanks and valves.

58. Moreover, Plaintiffs operated the greenhouses without issue during the period after April 2025 through closing on October 14, 2025. In any event, Aris spent $118,000 to replace the steel pipes connected to the pressure tanks to maintain and preserve them and had no knowledge of any issues prior to closing.

59. Defendants knew exactly what they were purchasing, and the condition and value thereof.

60. Defendants' refusal to release the funds held in escrow, is a calculated attempt to force Plaintiffs into additional price concessions.

61. Under Section 8.2 of the Purchase Agreement, Defendants must indemnify Plaintiffs "against and in respect of any and all Losses resulting or arising from or otherwise relating to (i) any breaches of Buyer's representations and warranties set forth in this Agreement,

(ii) any nonfulfillment of, or failure to comply with, any covenant of Buyer set forth in this Agreement." Losses are defined to include reasonable legal fees and expenses.

62. As a direct and proximate cause of Defendants' failure to pay the Purchase Price to Plaintiffs, the Plaintiffs have suffered substantial damages in an amount believed to be in excess of $500,000.

63. The Defendants are jointly and severally liable to Plaintiffs for the substantial harm caused to the Plaintiffs.

## FIRST CLAIM FOR RELIEF
### Breach of Contract against Defendants

64. Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

65. Plaintiffs and Defendants entered into a valid and enforceable Purchase Agreement and Escrow Agreement on October 14, 2025 and October 16, 2025 respectively.

66. Plaintiffs have fully performed all their obligations under the Purchase Agreement and the Escrow Agreement.

67. Plaintiffs have not breached any of the representations and warranties contained in Section 3 of the Purchase Agreement.

68. Defendants breached the Purchase Agreement by asserting unsubstantiated and false Indemnification Claims under Section 8.2 of the Purchase Agreement and refusing to execute a written directive authorizing the release of the full Escrow Funds; thereby, failing to pay Plaintiffs the Purchase Price due thereunder.

69. As a direct and proximate result of the Defendants' material breach of the Purchase Agreement, Plaintiffs have been denied the full benefit of the Purchase Agreement and have suffered substantial monetary harm.

70. As a direct and proximate result of Defendants' breach of the Purchase Agreement, Plaintiffs demand compensatory damages in an amount to be fully determined at trial and in excess of $500,000.

71. The Defendants are jointly and severally liable to Plaintiffs for the Defendants' breach of the Purchase Agreement.

## SECOND CLAIM FOR RELIEF
### Specific Performance against Defendants (In The Alternative)

72. Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

73. The Purchase Agreement and Escrow Agreement sets forth the Plaintiffs' entitlement to the Escrow Funds three months after the closing date.

74. The transaction closed on October 14, 2025 and therefore, Plaintiffs were entitled to the release of the Escrow Funds on January 15, 2026.

75. In violation of the express, unambiguous terms, of the Purchase Agreement, Defendants manufactured six alleged Losses for which they sought indemnification for and caused the Escrow Agent to delay releasing the Escrow Funds rightfully due to the Plaintiffs.

76. As a result, the Escrow Agent has not released the Escrow Funds that are due to the Plaintiffs.

77. Defendants, despite Plaintiffs repeated requests, have failed to notify the Escrow Agent to release the funds currently due to the Plaintiffs.

78. Plaintiffs have no adequate remedy at law to obtain the release of the Escrow Funds.

79. Justice requires that the Defendants be required to observe their obligations under the Purchase Agreement, including but not limited to executing a written directive to the Escrow Agent to disburse the Escrow Funds to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against Defendants, jointly and severally, as follows:

A. Order Defendants to immediately notify the Escrow Agent to authorize and cause the release of the $500,000 Escrow Funds due to Plaintiffs;

B. Award Plaintiffs compensatory damages in an amount not less than $500,000 as a result of Defendants' breach of the Purchase Agreement;

C. Award Plaintiffs their reasonable costs and expenses, including reasonable legal fees and expenses, as a result of Defendants' breach of the Purchase Agreement as authorized by Section 8.2 of the Purchase Agreement;

D. Award pre- and post-judgment interest; and

E. Grant Plaintiff such other and further relief as the Court deems just and equitable.

Dated:  February 3, 2026                    Respectfully Submitted,

*s/ Daniel B. Huyett*
Daniel B. Huyett
Pa. Attorney I.D. No. 21385
STEVENS & LEE, P.C.
111 North Sixth Street, P.O. Box 679
Reading, PA 19603-0679
Telephone:  (610) 478-2219
Facsimile:  (202) 988-0801
daniel.huyett@stevenslee.com

Mark J. Skakun (#0023475) pro hac vice pending
Matthew D. Smith (0099806) pro hac vice pending
4277 Munson Street NW
Canton, Ohio 44718
Telephone:  (330) 492-8717
Fax:  (330) 492-9625
Email:  mskakun@bdblaw.com
            msmith@bdblaw.com

*Counsel for Plaintiffs Aris Horticulture, Inc. and Aris Land Holdings, LLC*